**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **GEORGE C. LOBB,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 5:26-cv-01339-MGM-DSQ |
| | § | |
| **CARLOS ANAYA, individually;** | § | |
| **PABLO BALBOA III, individually;** | § | |
| **THE CITY OF ENCINAL, TEXAS; and** | § | JURY TRIAL DEMANDED |
| **AGENT GARCIA (first name unknown),** | § | |
| individually, | § | |
| | § | |
| Defendants. | § | |

---

## PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT

Plaintiff George C. Lobb, by and through undersigned counsel, files this Second Amended Verified Complaint against Defendants Carlos Anaya, Pablo Balboa III, the City of Encinal, Texas, and Agent Garcia, and respectfully shows the Court as follows.

## I. NATURE OF THE ACTION

1. This is a civil rights action under 42 U.S.C. § 1983. On July 25, 2026, Defendant Anaya, an Encinal police officer, stopped Plaintiff on Interstate Highway 35 for an expired registration sticker. Nine minutes into the stop, Defendant Anaya ordered a wrecker to the scene and told dispatch, on the radio, that the reason was the expired registration. Twelve minutes into the stop he told Plaintiff that he would tow the Vehicle whether or not Plaintiff permitted a search. The disposition of the traffic infraction was fixed at that point.

2. Defendant Anaya nonetheless detained Plaintiff for another forty-five minutes. He had begun writing the citation three and a half minutes into the stop. He did not deliver it until forty-six minutes into the stop after a United States Border Patrol canine unit had been summoned, had arrived, had searched the Vehicle, and had departed.

3. Asked repeatedly to identify the specific articulable facts justifying the continued detention, Defendant Anaya gave three answers: the expired registration sticker; that Plaintiff was "still here"; and that a wrecker was on the way. Asked directly whether Plaintiff was free to leave, he answered that Plaintiff was not because Plaintiff would not hand over his keys.

4. Defendant Garcia, a Border Patrol agent, announced that his canine had alerted on the driver-side mirror. The announcement came after a complete circuit of the Vehicle that produced no alert, during a second pass, and at a position on the far side of the Vehicle where it was not visible to any camera present. No controlled substance or contraband of any kind was in the Vehicle, and none was found.

5. When Plaintiff declined to surrender his key, Defendants Garcia and Anaya threatened to break out the Vehicle's windows, and Defendant Anaya threatened to handcuff Plaintiff, search his person, and remove the key from his pocket, and to jail him for "obstructing." Plaintiff surrendered the key. Defendant Anaya then told him that he had been "gonna be in jail for obstructing," and that because he had given up the key, he was "good," essentially offering the Plaintiff a coerced quid pro quo. Defendant Garcia searched the Vehicle, damaged its engine electronics and electrical system, found nothing, and left.

6. After the citation was finally delivered, Plaintiff asked to call and pay for a private wrecker to take the Vehicle to Austin. Defendant Anaya telephoned Defendant Balboa, the Chief of Police, briefed him on the encounter, and then refused the request. The Vehicle went to the impound facility the City of Encinal owns and operates, where Plaintiff was told it would sit until Monday because no one would be there before then.

7. Two days later Defendant Balboa wrote to Plaintiff's counsel and named a price for the Vehicle's return: $420 in "impound" fees, $150 in "storage" fees, and $25 for every additional day. He identified no statute, no ordinance, and no policy. The City of Encinal has an ordinance. It sets the impound charge at $250. Plaintiff ultimately paid $1,020 to recover his automobile, by money orders he endorsed "Paid under protest and reservation of rights." He was never afforded notice of a hearing, or any hearing, at which he could contest the seizure, the retention, or the amount.

8. Plaintiff seeks damages and a declaration that what was done to him was unlawful.

## II. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

10. Plaintiff's claims arise under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

11. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in La Salle County, Texas, and in the Laredo Division under 28 U.S.C. § 124(b).

## III. PARTIES

13. Plaintiff GEORGE C. LOBB is a natural person and a citizen of the United States residing in Texas. He is the registered owner of the Vehicle described below. He filed this action pro se and has since retained undersigned counsel.

14. Defendant CARLOS ANAYA is, on information and belief, a peace officer employed by or serving the Encinal Police Department, a department of the City of Encinal, Texas. At all relevant times he acted under color of state law and within the course and scope of his employment. He is sued in his individual capacity.

15. Defendant PABLO BALBOA III is the Chief of Police of the Encinal Police Department. At all relevant times he acted under color of state law. He is sued in his individual capacity.

16. Defendant THE CITY OF ENCINAL, TEXAS is a municipal corporation and a General Law Type A city located in La Salle County. It operates the Encinal Police Department and the vehicle impound facility at issue. It may be served through its Mayor, Debra Weikel, or its City Manager, Velma Davila, at 701 Berry Street / P.O. Box 120, Encinal, Texas 78019-0120.

17. Defendant AGENT GARCIA is, on information and belief, an agent of the United States Border Patrol, a component of U.S. Customs and Border Protection. His first name

remains unknown: the surname "Garcia" was legible on the name plate affixed to his uniform, but the preceding initial was obscured from Plaintiff's view by the handheld radio worn on his chest. Plaintiff has sought his identity from U.S. Customs and Border Protection and has not received it. He is sued in his individual capacity. Plaintiff will seek leave to amend to state his full name upon learning it.

18. Defendant Garcia is sued under 42 U.S.C. § 1983 on the ground that he acted jointly and in concert with Defendant Anaya, a state actor, and therefore under color of state law. *See Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). The facts establishing joint action are pleaded at Part IV.H.

19. **Reservation as to the United States.** Plaintiff has presented an administrative claim under 28 U.S.C. § 2675(a) and intends to assert claims under the Federal Tort Claims Act upon exhaustion. Those claims are not brought here, and nothing in this Complaint waives any claim against the United States, the Department of Homeland Security, U.S. Customs and Border Protection, or the United States Border Patrol.

## IV. FACTUAL ALLEGATIONS

**A note on timekeeping.** Defendant Anaya operated a body worn camera throughout the encounter, and his patrol vehicle was equipped with a dash camera. Both recordings have been produced to Plaintiff. Dispatch called out the time of the stop on the radio as 14:37. The times stated below are clock times derived from that call-out and corroborated independently by Plaintiff's telephone records, which show a call placed at 15:32 to a number Defendant Anaya read aloud to Plaintiff fifty-five minutes into the recording.

**A. The Vehicle**

20. Plaintiff is the registered owner of a 2012 Lexus LS bearing Vehicle Identification Number JTHCL5EF1C5015238 and Texas License Plate TDJ5102 (the "Vehicle").

**B. The stop**

21. On Saturday, July 25, 2026, at 14:37, Plaintiff was driving the Vehicle northbound on Interstate Highway 35, approximately eight miles north of Encinal, in La Salle County, Texas. That location is outside the territorial limits of the City of Encinal.

22. Defendant Anaya activated his overhead emergency lights. Plaintiff promptly and safely pulled over. Defendant Anaya told Plaintiff the reason for the stop was an expired registration sticker. Plaintiff provided his driver's license on request.

**C. The traffic mission, and the point at which it was complete**

23. The mission of a stop for an expired registration sticker consists of addressing that infraction and attending to related safety concerns: checking the driver's license, determining whether there are outstanding warrants, inspecting registration and insurance, and writing the citation. *Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015).

24. At approximately 14:40, three and a half minutes into the stop, Defendant Anaya took out his clipboard and began filling out the citation.

25. At approximately 14:43 Defendant Anaya asked dispatch to determine which wrecker service was next in the rotation. At approximately 14:44 dispatch identified Tijerina. Defendant Anaya asked for an estimated time of arrival.

26. At approximately 14:46 dispatch relayed a twenty-five minute estimated arrival time. Defendant Anaya responded, in substance, by asking dispatch to start rolling the wrecker out to the scene, and stated on the radio that the reason was the expired registration.

27. From that moment the disposition of the traffic infraction was fixed: a citation was being written, and the Vehicle was going to be towed.

28. Defendant Anaya did not deliver the citation to Plaintiff until approximately 15:23, which is forty-six minutes into the stop, and forty-three minutes after he began writing it.

**D. The prolongation**

29. At approximately 14:40, Defendant Anaya asked dispatch whether any canine unit was in the area. He did so after asking Plaintiff about his destination and occupation and after asking for permission to search the trunk, which Plaintiff declined.

30. Plaintiff did not consent to a search of the trunk or of any part of the Vehicle. He nonetheless volunteered what the trunk contained: pool noodles, children's toys, shopping bags, and a tire pump. Defendant Anaya persisted. Plaintiff refused again.

31. At approximately 14:48 Defendant Anaya told Plaintiff that a canine unit was on the way and would arrive in about fifteen minutes, and that the Vehicle was going to be towed that day for expired registration.

32. At approximately 14:48 Plaintiff asked what reasonable suspicion Defendant Anaya had to detain him. Defendant Anaya answered, in substance, that he was bringing the canine.

33. At approximately 14:49 Plaintiff asked whether Defendant Anaya had a warrant to seize and tow the Vehicle. Defendant Anaya answered that he was towing it for the expired

registration, and then stated, in substance, that he would tow the Vehicle regardless of whether Plaintiff permitted a search.

34. At approximately 14:49 Plaintiff asked Defendant Anaya how many vehicles he had towed that month. Defendant Anaya answered, in substance, that Plaintiff would be the first one that month.

35. At approximately 14:50 Plaintiff asked Defendant Anaya to state the specific, articulable facts supporting a detention beyond the time necessary to write a citation for the sticker. Defendant Anaya answered, in substance, that Plaintiff was still there, and then that the only reason was that the wrecker was on the way. Plaintiff stated that he did not consent.

36. An expired registration sticker does not supply reasonable suspicion that a vehicle contains contraband. Defendant Anaya possessed no other articulable basis for suspicion, and identified none when asked.

**E. The canine**

37. Defendant Garcia arrived at approximately 14:59 with a canine. He was equipped with and operating a body worn camera.

38. At approximately 15:00 Defendant Anaya told Defendant Garcia, in substance, that Plaintiff had denied consent and had said to call the canine unit if Defendant Anaya wanted to search. Defendant Garcia asked whether the Vehicle was disabled. Defendant Anaya answered that it was not, and that it was expired registration.

39. At approximately 15:01 Plaintiff asked Defendant Anaya how many vehicles he had towed that year, and how many citations he had written without towing. Defendant

Anaya answered, in substance, that Plaintiff would have to ask the Chief (Balboa), who had all the statistics, and that he did not know off the top of his head.

40. Beginning at approximately 15:01, Defendant Garcia walked the canine around the exterior of the Vehicle, completing a full circuit. No alert was announced. He then began a second pass.

41. During the second pass, Defendant Garcia remained at the driver-side front of the Vehicle, on the side away from Defendant Anaya's body worn camera and away from Plaintiff's position, for approximately thirty seconds. At approximately 15:03, from that position, he announced that the canine had alerted. The announced alert is not visible on any recording made at the scene.

42. Defendant Garcia then told Defendant Anaya that the odor was at the driver-side mirror, and that it could be coming from that area or from the engine.

43. Plaintiff disputed that any valid alert had occurred and said so at the time. Plaintiff was correct. No controlled substance and no contraband of any kind was in the Vehicle, and none was found.

44. On information and belief, either no alert occurred and Defendant Garcia misrepresented that one had, or the canine's response was induced by Defendant Garcia. Plaintiff pleads these alternatives under Rule 8(d)(2). Defendant Garcia's body worn camera recording, and the canine's certification, training, and deployment records, bear directly on which occurred.

**F. The threats**

45. At approximately 15:04 Defendant Garcia told Plaintiff he would need the keys. Plaintiff said he did not consent to a search. Defendant Garcia answered, in substance, that he no longer needed consent because his dog had alerted.

46. Defendant Garcia then told Plaintiff, in substance, to hand over the keys or they would force their way in, and confirmed when asked that this meant breaking a window. He repeated that it was Plaintiff's last chance and that they would break the window.

47. At approximately 15:05 Defendant Garcia asked Defendant Anaya how long until the wrecker arrived. Defendant Anaya answered forty-five minutes, and that the estimate was fifteen or twenty minutes old. Defendant Garcia then offered to break the window. Defendant Anaya declined, saying in substance that he would just get the keys from Plaintiff, who was obstructing Defendant Garcia.

48. Defendants thus possessed, on their own account, probable cause to search the Vehicle without a key and without consent, and elected instead to obtain the key by threatening Plaintiff with arrest.

49. At approximately 15:08 Defendant Anaya asked Plaintiff for his keys and told him, in substance, that he would be placed in handcuffs if he did not produce them. When Plaintiff asked whether he was being threatened with arrest for not surrendering the keys, Defendant Anaya answered that Plaintiff was obstructing, and then stated that he would put Plaintiff in handcuffs so that he could search him and take the keys out of his pocket.

50. At approximately 15:09 Plaintiff asked whether he was being detained and whether he was free to leave. Defendant Anaya answered that Plaintiff was detained and was not free to leave, because Plaintiff was not giving them the keys.

51. At approximately 15:10 Plaintiff surrendered the key. Defendant Anaya then told Plaintiff to put his hands behind his back and confirmed, when asked, that he was placing him under arrest. He did not do so, nor did he offer Plaintiff any explanation as to why he was initially going to arrest him for "obstruction," but then decided Plaintiff had not, in fact committed said crime. He told Plaintiff, in substance, that he had been going to arrest him for obstructing, that Plaintiff had now given up the key, and that Plaintiff was therefore "good." Plaintiff stated at the time that he had complied because he did not want to be handcuffed.

52. Plaintiff's compliance was coerced. It was not consent. *See Bumper v. North Carolina*, 391 U.S. 543, 548–50 (1968); *Schneckloth v. Bustamonte*, 412 U.S. 218, 227–28 (1973).

53. Plaintiff at all times remained at a distance from the Vehicle, stood clear of the officers, and did nothing to physically impede anyone. No Texas offense is committed by declining to unlock one's own vehicle, and no probable cause supported the threatened charge.

## G. The search and the damage

54. At approximately 15:10 Defendant Anaya told Defendant Garcia, in substance, that he had been going to arrest Plaintiff for obstructing and that Plaintiff had then given him the keys. Defendant Garcia began his search. Defendant Anaya stood by and watched.

55. In the course of that search Defendant Garcia tore into the Vehicle's engine electronics, damaging the electrical system and rendering the Vehicle inoperable. It would not start. Nothing about a search for narcotics required dismantling or disabling the Vehicle's engine electronics or electrical system.

56. The search concluded at approximately 15:17. Nothing was found. At approximately 15:17 Defendant Anaya handed Defendant Garcia a mobile telephone and Defendant Garcia signed something on it. On information and belief, a record of the canine deployment or of the search exists in electronic form.

57. At approximately 15:18 Defendant Garcia thanked Plaintiff for his time and cooperation and left. He provided Plaintiff no report, no inventory, no property damage claim form, and no explanation.

**H. The joint action of Defendants Anaya and Garcia**

58. Defendants Anaya and Garcia acted jointly and in concert. Specifically:

(a) Defendant Anaya, a municipal peace officer, initiated and controlled the detention, and summoned a canine unit after Plaintiff refused consent;

(b) Defendant Anaya told Defendant Garcia on arrival that Plaintiff had denied consent, and that Plaintiff had invited him to call a canine unit if he wanted to search;

(c) Defendant Garcia conducted the canine sweep at Defendant Anaya's request and in furtherance of Defendant Anaya's stated objective of searching the Vehicle;

(d) the two Defendants jointly threatened to break out the Vehicle's windows, and conferred with one another about whether to do so;

(e) Defendant Anaya threatened arrest under state law in order to compel surrender of the key, reported to Defendant Garcia that he had done so, and Defendant Garcia then conducted the search that the threat had made possible; and

(f) Defendant Anaya thereafter seized the Vehicle and directed it to a municipal facility.

59. Defendant Garcia thus acted under color of state law. *Dennis v. Sparks*, 449 U.S. at 27–28.

**I. The citation, the refused private tow, and the call to the Chief**

60. At approximately 15:23, Defendant Anaya delivered Plaintiff's driver's license and citation number 020600. Plaintiff signed the citation.

61. Plaintiff asked where the Vehicle was going and whom to contact. Defendant Anaya told him it was going to the impound lot at the Encinal Police Department. Plaintiff asked whether anyone would be working before Monday. Defendant Anaya answered that no one would, and confirmed that the Vehicle would sit at the facility until Monday.

62. At approximately 15:25 Plaintiff asked to call his own tow truck and pay it to take the Vehicle to Austin, where he lives. He repeated the request.

63. At approximately 15:27 Defendant Anaya returned to his patrol vehicle and placed a telephone call to Defendant Balboa. The recording captures Defendant Anaya's side of that call. He told Defendant Balboa, in substance: that he was impounding a vehicle for expired registration; that Plaintiff said he was an attorney; that Plaintiff was requesting to call his own tow truck to take the Vehicle to Austin because no one would be at the facility that day; that he had had Border Patrol come out and conduct a canine search because Plaintiff had denied consent; that he had told Plaintiff from the beginning that the Vehicle would be impounded; that Plaintiff had argued with him about where the Transportation Code authorized a tow for registration; that Plaintiff was giving him a hard time; and that the decision was up to Defendant Balboa.

64. Defendant Anaya remained on the call for approximately two minutes. Plaintiff does not plead what Defendant Balboa said, which is not captured on the recording.

65. At approximately 15:32, immediately following that call, Defendant Anaya refused Plaintiff's request. He told Plaintiff, in substance, that the Vehicle was going to the impound lot at the Encinal Police Department. He provided Plaintiff the telephone number for Tijerina Towing. Plaintiff dialed that number at 15:32. On information and belief, Defendant Balboa was informed of the material circumstances of the seizure and approved or directed the refusal of the private tow and the removal of the Vehicle to the City's facility.

66. At approximately 15:34 Plaintiff asked whether he was free to leave. Defendant Anaya answered that he was. The wrecker did not arrive until approximately 16:06, more than thirty minutes after Plaintiff was released, and more than eighty minutes after Defendant Anaya first told Plaintiff that the only reason for his continued detention was that a wrecker was on the way.

67. After releasing him, Defendant Anaya offered to drive Plaintiff to a truck stop. Plaintiff declined; he had already arranged for a driver from Encinal to come get him. While awaiting the wrecker, Plaintiff removed his personal property from the Vehicle, on the shoulder of the highway, in Defendant Anaya's presence.

68. As Plaintiff removed his own belongings, Defendant Anaya made a partial accounting of the Vehicle's contents. According to the body camera footage provided, he did not complete it. The property he observed was property Plaintiff was then taking into his own possession. On information and belief, no official inventory sheet of the Vehicle's

contents was prepared, no copy of any inventory was furnished to Plaintiff, and Plaintiff was given no tow slip, property receipt, or notice of any kind at the scene. Any accounting that occurred took place after the impoundment had been ordered, after the canine search had concluded, and after Defendant Garcia had departed. The towing receipt attached as Exhibit F bears blank fields for vehicle inventory notes and for inventory received, and the boxes marked inventory, secure vehicle, and motor vehicle record inquiry are unmarked.

69. There was no vehicle left unattended on the roadway, no obstruction, no hazard, and no community caretaking need of any kind. Plaintiff was present and had offered, at his own expense, a private wrecker that would have taken the Vehicle to his home city.

**J. The City's ordinance**

70. On September 13, 2016, the Board of Mayor and City Council of the City of Encinal adopted Ordinance No. 2016-09-13, "An Ordinance to Establish Impound Lot Regulations and Fees for Impounded and/or Seized Vehicles." A true and correct copy of the Ordinance as enacted is attached as Exhibit B. It was passed on first reading on August 9, 2016 and on second reading on September 13, 2016, signed by the Mayor, attested by the City Manager, and approved by the City Attorney. City Defendants have separately produced to Plaintiff a seven-page document bearing the same ordinance number, unsigned and undated, which sets out sixteen enumerated grounds for impoundment and reproduces extended portions of the Texas Occupations Code. A true and correct copy of that document as produced is attached as Exhibit C. Plaintiff is

presently unable to state whether it was enacted, adopted as departmental policy, or prepared for some other purpose, and pleads the Ordinance as enacted.

71. Section 1 of the Ordinance authorizes members of the police department to impound a vehicle only "when reasonably necessary for the security of the vehicle or to prevent obstruction of traffic," and only to "remove from the streets" a vehicle "whose operator is arrested" or an "unattended vehicle which is parked, so as to constitute an obstruction or hazard to normal traffic."

72. None of those conditions was present. Plaintiff was not arrested. The Vehicle was not unattended. It was not parked so as to obstruct or endanger traffic. It was not on the streets of Encinal. A private wrecker had been offered and refused. And the Vehicle's security was better served by the private tow Plaintiff proposed than by a municipal lot that no one would attend until Monday.

73. Section 1 further provides that the fee for impounding a vehicle "shall be equal to the fee charged by the wrecker service who tows the vehicle," and leaves the daily storage figure blank. Section 2 sets the Impound Charge at $250.00 one time, the Storage Fee at $150.00 one time, and the Daily Charge at $25.00. Section 1 provides that "[a]ny part of a day shall count as a whole day." The Ordinance contains no weekend exclusion. Each of those figures exceeds what Texas law permits. Section 2303.155(b) of the Texas Occupations Code provides that "[t]he operator of a vehicle storage facility or governmental vehicle storage facility may charge the owner of a vehicle stored or parked at the facility" an impoundment fee of $20 and a daily storage fee of not more than $20 for a vehicle not longer than 25 feet, each subject to biennial adjustment under §

2303.1552 and presently set by Commission rule at $22.85. See 16 Tex. Admin. Code § 85.722. Section 2303.155(f) provides that such an operator "may not charge an additional fee related to the storage of a vehicle other than a fee authorized by this section or a towing fee authorized by Chapter 2308." And § 2303.155(g) provides: "This section controls over any conflicting municipal ordinance or charter provision." Exhibit C, produced by City Defendants, reproduces each of those provisions.

74. The Ordinance provides for no hearing of any kind, before or after a seizure, and no review by any tribunal of either the lawfulness of an impoundment or the amount of the charges. Exhibit C describes a requirement that a law enforcement agency send written notice to the registered owner by certified mail within ten days, stating the amount of all charges due. Neither document affords the owner any opportunity to be heard, and neither provides for notice of a right to a hearing.

**K. The demand for money and the payment under protest**

75. By July 27, 2026, undersigned counsel had notified the Encinal Police Department in writing that he represented Plaintiff in connection with the impoundment of the Vehicle. At approximately 1:37 p.m. that day, Defendant Balboa sent undersigned counsel an electronic mail message stating that he had "received a message from George Lobb regarding his vehicle," and stating, in relevant part: "The vehicle currently has a $420 impound fee and a $150 storage fee, totaling $570. Please note that an additional $25 daily fee applies, excluding weekends." The message was forwarded to Plaintiff the same afternoon. A true and correct copy is attached as Exhibit A.

76. Defendant Balboa's message identified no statute, no ordinance, no regulation, and no written policy. Asked why the Vehicle was being held, the Chief of Police responded with an invoice. On July 29, 2026, four days after the seizure, the Encinal Police Department sent Plaintiff a letter by certified mail, return receipt requested, No. 7016 2070 0000 4429 1665. That letter stated charges of $420.00 for the wrecker, $150.00 in storage, $25.00 per day for four days, and a $50.00 notification charge, for a subtotal of $720.00. It further stated that if the Vehicle were not claimed within twenty days of the date of the notice, it "will be auctioned off at public auction and sold to the highest bidder." The letter identified no statute, ordinance, or fee schedule under which it was issued. The twenty-day period it set would have expired on August 18, 2026, which was the day before the hearing then set on Plaintiff's motion for a temporary restraining order. The notice stated that the owner "have the right to claim the vehicle within twenty days upon payment of all charges against this vehicle." It said nothing of any right to contest the seizure or the charges, and gave no notice of a right to a hearing. A true and correct copy of the notice, together with the towing receipt enclosed with it, is attached as Exhibit F.

77. The towing receipt enclosed with the July 29 notice shows that the $420.00 was a charge for towing and nothing else. Rivera's Towing, doing business as Tijerina Towing, itemized it as $255.00 for towing, a mileage charge, and a $125.00 call-out fee, for a grand total of $420.00. The receipt's printed lines for Storage, Notification, Impoundment, Government Entity Fee, and Sales Tax are blank, as are the fields for date entered, date released, total days of storage, and the daily rate. The towing company charged no impoundment fee, no storage fee, and no notification fee. Defendant Balboa

nonetheless described the $420.00 as an "impound fee" on July 27, and the City added a $50.00 notification charge that appears nowhere on the towing company's invoice. A notification fee is a charge authorized by Tex. Occ. Code § 2303.155(b)(1) and capped by § 2303.155(c), which is to say a charge available to a vehicle storage facility. The City imposed it while maintaining that it is not one. The $25.00 daily charge exceeds the $22.85 daily maximum § 2303.155(b)(3) permits, and the weekend exclusion Defendant Balboa described appears in neither the Ordinance, which counts any part of a day as a whole day, nor the statute. Section 1 of the Ordinance provides that the impound fee shall equal the fee charged by the wrecker service, while Section 2 fixes the Impound Charge at $250.00; the City has never said which of its own provisions it was applying. In all, the City named three different sums in three communications, $570.00 on July 27, $720.00 on July 29, and $1,020.00 as the amount ultimately required, and identified the legal basis for none of them.

78. On August 15, 2026, Plaintiff delivered to Defendant Balboa, by certified mail and electronic mail and copied to the Mayor and the City Manager, a written claim of the Vehicle and objection to the charges, a true and correct copy of which is attached as Exhibit E. Plaintiff there claimed the Vehicle within the period the July 29 notice stated, objected to every charge, asked Defendant Balboa to identify the statute, ordinance, or adopted fee schedule authorizing each charge separately, asked whether the City contended the facility was a vehicle storage facility licensed by the Texas Department of Licensing and Regulation, and asked that the Vehicle not be sold, altered, or repaired. On information and belief, Plaintiff received no written response identifying the authority for any charge. On August 17, 2026, Plaintiff paid the City of Encinal $1,020.00 by two

United States Postal Service money orders, serial numbers 28977643912 and 28977643923, in the amounts of $1,000.00 and $20.00. Plaintiff endorsed each money order with the notation "Paid under protest and reservation of rights." True and correct copies are attached as Exhibit D.

79. The $1,020.00 Plaintiff paid exceeds the maximum the Ordinance authorizes on any reading of it, and exceeds the maximum Texas law authorizes by approximately $450. The Vehicle was held for twenty-four calendar days. At the rates § 2303.155 permits, the total authorized charge was approximately $571.25. The City negotiated both instruments notwithstanding the protest notation.

80. The Vehicle was released to Plaintiff on August 17, 2026 at approximately 11:15 a.m.

**L. The absence of any hearing**

81. Plaintiff was never afforded notice of any hearing, or any hearing, at which he could contest the lawfulness of the seizure, the continued retention of the Vehicle, or the amount of the charges demanded as a condition of its return. The only notice he received, on July 29, 2026, told him that he could claim the Vehicle by paying and that it would otherwise be sold at auction. The towing receipt enclosed with that notice states on its face that it concerned a non-consent tow and that a copy of the rights of the owner or operator was located on the reverse side of the receipt. On information and belief, no such statement of rights was furnished to Plaintiff.

82. Chapter 2308 of the Texas Occupations Code entitles the owner of a vehicle removed without consent and placed in a *vehicle storage facility* to a hearing in justice court on whether probable cause existed for the removal and on whether the charges exceeded the

amounts authorized by law. *Tex. Occ. Code* §§ 2308.452–.453. *Tex. Occ. Code* § 2303.002(8) defines a "vehicle storage facility" as one owned by a person other than a governmental entity, so that the hearing right is keyed to a facility a governmental entity does not own. The fee limits of § 2303.155(b), by contrast, apply by their terms to a "vehicle storage facility or governmental vehicle storage facility," and § 2303.155(g) makes that section controlling over any conflicting municipal ordinance.

83. The City of Encinal owns and operates the facility to which the Vehicle was taken. City Defendants have taken the position in this litigation that Chapters 2303 and 2308 do not apply to the City because the Legislature "explicitly exempted City-owned facilities." The consequence of that position is that Texas law caps what the City may charge while affording the owner no forum in which to enforce the cap. The City seizes vehicles, sets the price of their return above the statutory maximum, increases that price daily, and affords the owner no hearing before any tribunal at any time.

84. The City of Encinal has a direct pecuniary interest in the impoundment of vehicles. The fees are collected by and for the City through a facility the City owns and operates, and were paid directly to the City here.

**M. Damages**

85. As a direct and proximate result of Defendants' conduct, Plaintiff paid $1,020.00 to the City of Encinal to recover his automobile, and has incurred rental car expenses, travel expenses, lost wages, the cost of repairing the damage to the Vehicle's engine and electrical components, towing charges, and other out-of-pocket losses.

## V. ALLEGATIONS LIMITING THE SCOPE OF THIS ACTION

86. **No challenge to citation number 020600.** Plaintiff does not challenge the validity of citation number 020600, and does not seek any ruling that his registration was current or that Defendant Anaya lacked an initial basis to stop him. Plaintiff's claims concern only what occurred *after* the tasks tied to the registration infraction were, or reasonably should have been, completed. *See Rodriguez*, 575 U.S. 348; *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008).

87. **No bar under Heck v. Humphrey.** Success here would not necessarily imply the invalidity of any conviction or sentence. *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994). A judgment that the stop was unlawfully prolonged, that the search was unlawful, that the impoundment departed from the City's own criteria, or that the fee practice violates due process is fully consistent with the validity of a citation for an expired registration sticker.

88. **No interference with any state proceeding.** Plaintiff does not seek to enjoin, stay, or invalidate any state proceeding. The relief sought is damages and a declaration, neither of which is directed at any prosecution or could prejudice one on the merits. *See Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975).

89. **The deprivation was not random or unauthorized.** The seizure and retention of the Vehicle and the imposition of the charges were effected pursuant to a duly adopted City ordinance and by officials exercising authority the City delegated to them. They were not the random, unauthorized acts of a rogue employee, and no adequate post-deprivation state remedy forecloses relief. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982); *Zinermon v. Burch*, 494 U.S. 113 (1990).

## VI. CAUSES OF ACTION

**COUNT I. Fourth Amendment: Unlawful Prolongation of the Stop**

*(42 U.S.C. § 1983, against Defendant Anaya)*

90. Plaintiff incorporates by reference each preceding paragraph.

91. A traffic stop "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a ticket, and authority for the seizure ends when the tasks tied to the infraction are, or reasonably should have been, completed. *Rodriguez v. United States*, 575 U.S. 348, 350–51, 354 (2015); *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). A dog sniff that adds time to a stop requires independent reasonable suspicion. *Rodriguez*, 575 U.S. at 355–57; *see also Lincoln v. Turner*, 874 F.3d 833, 840–42 (5th Cir. 2017).

92. Defendant Anaya began writing the citation at approximately 14:40 and ordered the wrecker dispatched at approximately 14:46, announcing on the radio that the reason was the expired registration. By approximately 14:49 he had told Plaintiff that the Vehicle would be towed regardless of any search. The tasks tied to the infraction were, or reasonably should have been, completed at that point.

93. Defendant Anaya did not deliver the citation until approximately 15:23 and did not release Plaintiff until approximately 15:34, forty-five minutes after the disposition of the infraction was fixed. He used that time to await a canine unit, to procure a search, and to obtain a key.

94. Defendant Anaya had no reasonable suspicion of any other offense. Asked four times to identify a basis, he identified the registration sticker, that Plaintiff was still present, and that a wrecker was coming. He released Plaintiff more than thirty minutes before the wrecker arrived.

95. Defendant Anaya's conduct violated Plaintiff's clearly established rights under the Fourth Amendment. Rodriguez was decided more than eleven years before this stop.

**COUNT II. Fourth Amendment: Unlawful Search and Coerced Consent**

*(42 U.S.C. § 1983, against Defendants Anaya and Garcia)*

96. Plaintiff incorporates by reference each preceding paragraph.

97. The search was conducted without a warrant, without probable cause, and without voluntary consent.

98. Plaintiff's refusal to consent could not itself supply reasonable suspicion or probable cause. *See Florida v. Bostick*, 501 U.S. 429, 437 (1991). Defendant Anaya nonetheless identified that refusal as the reason Plaintiff was not free to leave.

99. Any apparent consent was procured by a threat of arrest on a charge lacking probable cause and by a threat to destroy Plaintiff's property, and was therefore involuntary as a matter of law. Acquiescence to a claim of lawful authority is not consent. *Bumper v. North Carolina*, 391 U.S. 543, 548–50 (1968).

100. No valid canine alert supplied probable cause. As alleged above, either no alert occurred or the canine's response was induced.

101. Defendants' conduct violated Plaintiff's clearly established rights under the Fourth Amendment.

**COUNT III. Fourth Amendment: Unreasonable Manner and Scope of the Search**

*(42 U.S.C. § 1983, against Defendants Garcia and Anaya)*

102. Plaintiff incorporates by reference each preceding paragraph.

103. A search supported by probable cause must still be reasonable in manner and scope, and gratuitous destruction of property in the course of a search violates the Fourth Amendment. *See United States v. Ramirez*, 523 U.S. 65, 71 (1998); *Soldal v. Cook County*, 506 U.S. 56, 61–62 (1992).

104. Defendant Garcia's destruction of the Vehicle's engine electronics and electrical system exceeded any permissible scope and was not reasonably necessary to any legitimate search objective. The Vehicle was rendered inoperable.

105. Defendant Anaya was present, observed the conduct, had a reasonable opportunity to intervene, and did not.

**COUNT IV. Fourth Amendment: Unlawful Seizure and Continued Retention of the Vehicle**

*(42 U.S.C. § 1983, against Defendants Anaya, Balboa, and the City of Encinal)*

106. Plaintiff incorporates by reference each preceding paragraph.

107. A seizure of property occurs when there is meaningful interference with an individual's possessory interests. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *Soldal*, 506 U.S. at 61.

108. The impoundment of a vehicle must be conducted according to standardized criteria and may not serve as a pretext for investigation. *South Dakota v. Opperman*, 428 U.S. 364 (1976); *Colorado v. Bertine*, 479 U.S. 367, 375–76 (1987); *Florida v. Wells*, 495 U.S. 1, 4 (1990).

109. The City of Encinal has adopted standardized criteria. Ordinance No. 2016-09-13 authorizes impoundment only where reasonably necessary for the vehicle's security or to prevent obstruction of traffic, and only as to a vehicle whose operator is arrested or that is unattended and obstructing. Defendant Anaya satisfied none of those conditions and applied none of them.

110. Plaintiff offered, at his own expense, a private wrecker that would have removed the Vehicle to his home city. Defendant Anaya refused, after consulting Defendant Balboa, and directed the Vehicle to the facility from which the City collects fees.

111. Defendants' continued retention of the Vehicle, and their refusal to release it except upon payment of charges exceeding those the Ordinance authorizes, constituted an ongoing unreasonable seizure.

112. Defendant Balboa personally participated: he was consulted during the deprivation, he asserted the charges, he announced their daily increase, he identified no legal basis for the retention, and he controlled whether and on what terms the Vehicle would be released.

**COUNT V. Fourteenth Amendment: Deprivation of Property Without Due Process**

*(42 U.S.C. § 1983, against Defendant Balboa and the City of Encinal)*

113. Plaintiff incorporates by reference each preceding paragraph.

114. Plaintiff has a constitutionally protected property interest in his automobile and in the $1,020.00 demanded and paid as a condition of its return.

115. Defendants deprived Plaintiff of that property without any hearing, and without notice of any hearing, before or after the deprivation, at which he could contest the lawfulness of the seizure, the propriety of the retention, or the amount of the charges. The notice the City did send, on July 29, 2026, advised Plaintiff only that his automobile would be sold at auction if he did not pay. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Fuentes v. Shevin*, 407 U.S. 67, 80–82 (1972).

116. The Ordinance itself provides no hearing. The Legislature capped what a governmental vehicle storage facility may charge, Tex. Occ. Code § 2303.155(b), (f), and made that cap controlling over any conflicting municipal ordinance, id. § 2303.155(g). But the hearing at which an owner might enforce the cap, id. §§ 2308.452–.453, is keyed to a facility not owned by a governmental entity. On City Defendants' reading, the City is bound by the limit and answerable to no one for exceeding it. The consequence is a deprivation subject to no review by any tribunal, at any time, in any forum.

117. Conditioning the return of Plaintiff's property on payment of charges that exceed both the City's own published schedule and the maximum Texas law allows, that increase daily, that rest on no identified legal authority, and that are subject to no review does not

comport with due process. A limit the City is free to exceed without consequence is no limit at all.

118. The City's direct pecuniary interest in the fees it collects through its own facility aggravates the constitutional defect. *Cf. Tumey v. Ohio*, 273 U.S. 510 (1927); *Ward v. Village of Monroeville*, 409 U.S. 57 (1972).

**COUNT VI. First Amendment: Retaliation**

*(42 U.S.C. § 1983, against Defendant Anaya)*

119. Plaintiff incorporates by reference each preceding paragraph.

120. The freedom to verbally challenge and question the actions of a police officer, without being subjected to arrest or retaliation, is protected by the First Amendment. *City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987). A police officer may not take retaliatory action against a person for engaging in that protected speech. *Keenan v. Tejeda*, 290 F.3d 252, 258–59 (5th Cir. 2002).

121. Plaintiff engaged in protected speech when he repeatedly asked Defendant Anaya to articulate a factual basis for the detention and the search, questioned his authority to tow the Vehicle, asked where the Transportation Code authorized it, asked how many vehicles he had towed, and stated aloud that no valid canine alert had occurred. Plaintiff also engaged in protected conduct when he declined to consent.

122. Defendant Anaya threatened Plaintiff with handcuffs, with a search of his person, and with jail for "obstructing"; refused to release the Vehicle to a private wrecker; and seized the Vehicle. That conduct would chill a person of ordinary firmness.

123. No probable cause supported the threatened charge of obstructing, and Plaintiff was never arrested. Defendant Anaya told Defendant Balboa that Plaintiff had argued with him and was "giving him a hard time," and told Plaintiff that he was not free to leave because he would not surrender his keys.

124. Defendant Anaya stated that Plaintiff would be the first vehicle he had towed that month, and could not say how many he had towed that year. That is objective evidence that Plaintiff was treated differently from otherwise similarly situated persons who had not engaged in the same protected speech. *See Gonzalez v. Trevino*, 602 U.S. 653 (2024); *Nieves v. Bartlett*, 587 U.S. 391 (2019).

**COUNT VII. Municipal Liability**

*(42 U.S.C. § 1983, against the City of Encinal, Texas)*

125. Plaintiff incorporates by reference each preceding paragraph.

126. A municipality is liable under § 1983 where the execution of its policy or custom inflicts the constitutional injury. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Official policy includes the decisions of a government's lawmakers and the acts of its policymaking officials. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83 (1986). A municipality has no qualified immunity. *Owen v. City of Independence*, 445 U.S. 622, 638 (1980).

127. The constitutional violations alleged above were caused by the following policies of the City of Encinal:

(a) Ordinance No. 2016-09-13 itself, a duly enacted legislative act, which authorizes the City to seize vehicles, to condition their release on payment of "all applicable fees and costs," and to increase those charges daily, while providing no hearing and no review by any tribunal at any time;

(b) A policy or custom of impounding vehicles to a facility the City itself owns and from which the City collects fees, creating a direct municipal financial interest in the decision to impound;

(c) The fee schedule in Section 2 of the Ordinance, which sets charges exceeding the maximums Tex. Occ. Code § 2303.155(b) permits a governmental vehicle storage facility to charge, notwithstanding § 2303.155(g), which makes that section controlling over any conflicting municipal ordinance;

(d) A policy or custom of setting and collecting charges exceeding even those the Ordinance authorizes, and of describing terms, such as a weekend exclusion, found in neither the Ordinance nor the statute, and of conditioning the return of a seized vehicle on payment of those charges; and

(e) The City's position that the fee caps, notice requirements, and justice-court hearing procedure of Chapters 2303 and 2308 of the Texas Occupations Code do not apply to a facility it owns.

128. Defendant Balboa exercised final policymaking authority for the City with respect to the retention and release of impounded vehicles and the charges imposed. He was consulted by telephone during the seizure and informed of its material circumstances, and his decision of July 27, 2026 constitutes the policy of the City.

129. In the alternative, to the extent Defendant Balboa is determined not to hold final policymaking authority in that area, the City's policymakers adopted the Ordinance, have maintained it for ten years, and have actual knowledge of the practices described above.

The document City Defendants produced as Exhibit C reproduces § 2303.155 in full, including the fee limits and the provision making them controlling over a conflicting ordinance, from which it may be inferred that the City was aware of those limits.

130. These policies were the moving force behind the violation of Plaintiff's constitutional rights.

## VII. DAMAGES

131. Plaintiff seeks compensatory damages in an amount to be determined at trial, including the $1,020.00 paid to the City of Encinal, rental car expenses, travel expenses, lost wages, the cost of repair of the Vehicle, and towing charges.

132. Plaintiff seeks punitive damages against Defendants Anaya, Balboa, and Garcia in their individual capacities. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Plaintiff does not seek punitive damages against the City of Encinal.

133. Attorney's fees. Plaintiff does not seek, and will not seek, fees for work performed by himself while self-represented. *See Kay v. Ehrler*, 499 U.S. 432 (1991). Plaintiff seeks reasonable attorney's fees under 42 U.S.C. § 1988(b) for the services of retained counsel from the date of counsel's appearance forward.

## VIII. JURY DEMAND

134. Plaintiff demands a trial by jury on all issues so triable, pursuant to Federal Rule of Civil Procedure 38(b).

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff George C. Lobb respectfully requests that this Court:

a. Declare that the prolongation of the stop, the search of the Vehicle, and the seizure and continued retention of the Vehicle violated the Fourth and Fourteenth Amendments;

b. Declare that the City of Encinal's practice of conditioning release of impounded vehicles on charges that are unreviewable, and set without notice or hearing, violates the Fourteenth Amendment;

c. Award compensatory damages against Defendants, jointly and severally, in an amount to be determined at trial;

d. Award punitive damages against Defendants Anaya, Balboa, and Garcia in their individual capacities;

e. Award Plaintiff his costs of court and reasonable attorney's fees under 42 U.S.C. § 1988(b);

f. Award pre-judgment and post-judgment interest as allowed by law; and

g. Grant such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**GARCIA LAW FIRM, PLLC**
820 Main Street, Suite 211
Kerrville, Texas 78028
T: 210.346.0046 / F: 512.519.8554
dgarcia@danielgarcialaw.com

By: /s/ J. Daniel Garcia
**J. DANIEL GARCIA**
Texas State Bar No. 24059117
Federal ID No. 1132618
**ATTORNEY FOR PLAINTIFF**

## VERIFICATION

STATE OF TEXAS
COUNTY OF TRAVIS
I, George C. Lobb, am the Plaintiff in this action. I have read the foregoing Second Amended Verified Complaint. The factual statements in it are true and correct of my own personal knowledge, except those stated to be on information and belief, and as to those I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on October 9, 2026.

/s/ George C. Lobb /s/
**GEORGE C. LOBB**

## CERTIFICATE OF SERVICE

I certify that on October 9, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

/s/ J. Daniel Garcia
**J. DANIEL GARCIA**